The case is 3-19-05-00, Monroe Sheckler v. Dorothy Sheckler Appellants v. Auto-Owners Insurance Co. Appellee. Good morning, Counsel. Will Counsel please proceed to Appellant's Counsel? Yes. Mark Wertz for Dorothy and the late Monroe Sheckler. Counsel, how are you splitting your time? This is Mark Wertz, and I am arguing I have the 15-minute block for the Appellant, and Mr. Robertson is handling the rebuttal in a 5-minute slot. Okay, very well. Please proceed. Thank you. May it please the Court. Good morning. I represent Dorothy and the late Monroe Sheckler in this declaratory judgment action. The Circuit Court of Tazewell County Judge Reisinger applied the case and rationale of Hacker v. Shelter Insurance in finding that the Shecklers were not co-insured under the lease and insurance coverage in this case. Let me kind of outline the players. This case, the underlying case, began when Landlord McIntosh, who was insured by Auto-Owners, brought a suit against a repairman who ironically's name was Workman. So McIntosh sues Workman, and then Workman third-partied in the tenants who were the Shecklers. This case involves a fire and fire insurance policy and involves a gas explosion when the stove in the premises in Pekin, Illinois, was not working properly in two ways. One, the oven was not properly igniting, and secondly, one of the burners was not. So Mrs. Sheckler called the Landlord, Mr. McIntosh, who under the terms of the written lease was responsible for repairs. He called Mr. Workman, the repairman, to repair the stove, and Mr. Workman came over and thought he repaired the oven, but could not repair the burner. Yes, as a matter of fact, I'm in the middle. I'm sorry. I'm sorry, I heard a voice. Was that a question? It was Justice Schmidt. No, that was my bad. I apologize. I had a little interruption. I'm new to this. We all are, Your Honor. This is a first for all of us. Anyway, Mr. Sheckler, after Mr. Workman left, he couldn't again repair the burner, and Mr. Workman left. He was going to call and talk to the Landlord about what to do with this, quite frankly, elderly stove. In the meantime, after he left, Mr. Sheckler went up and apparently turned on a burner, and an explosion occurred. Auto Owners Insurance insures McIntosh, and they refused to provide either indemnity, in other words, insurance coverage, nor a defense, in other words, an attorney, for the Shecklers when I tendered that, both of those two auto owners. The underlying case has now been tried, and a verdict was rendered by a jury here in Tazewell County, and that verdict was not appealed. So that portion of the case is done. But at this point, we still are dealing with the fact that whether Auto Owners Insurance should have provided coverage, in other words, indemnity, and most importantly, a defense for the Shecklers, which they would not do. Were they listed as co-insured on the policy? I'm sorry, the question was? Were they listed as co-insured on the policies? They were not listed as co-insured on the policy itself, Justice Holdredge. But rather, it is our position they were co-insured under the case law here in this state, primarily the Dix decision, Dix Mutual from the Illinois Supreme Court. And that decision has been cited and used in this third district court's decision in Auto Owners v. Callaghan, I believe is how you pronounce it, C-A-L-L-A-G-H-A-N. It is cited on page 7 of my reply brief, Auto Owners v. Callaghan. And those decisions, both Dix Mutual from the Illinois Supreme Court and Auto Owners v. Callaghan, look at the terms of the lease to determine the party's intent. First, that's a two-part analysis. They look for the responsibilities for the property itself, the real property, including the improvements, and who's responsible for the personal property. And they look, again, to the lease as a whole. That's what the Dix Court did, and that's what this court did in Auto Owners v. Callaghan. Secondly, they looked in the lease to whether the rent was used to pay the insurance premiums. They're looking for the intent of the parties, and the Dix Mutual case and subsequently the Callaghan case found, based on the leases in those cases, that the tenant had achieved the status of co-insured because of the terms of the lease and the intent of the parties. Well, what do we have here in the lease that's going to write in, and that is a write-in under those decisions, a co-insured that was never in the contract of insurance with the landlord? This lease specifically, Your Honor, placed the responsibility for the property on the landlord and placed the responsibility for the personal property on the tenant. This lease is actually more specific than the lease in Dix Mutual. So, personal property is personal property of the tenant, isn't it? That's correct. And a renter's policy would be the option for a tenant to indemnify damage to personal property, right? Correct. Normally. And also, a renter's policy also has a provision, if you want to pay for it, for negligence. That could be. It depends on the terms of the policy and whether it's paid for, correct? So, what we're doing, are we shifting the burden of the landlord to provide a renter's policy to a tenant under these two decisions of writing in a co-insured through ambiguous, in my view, provisions of a lease? We are not, because the Dix decision, and again, this court's decision in Auto Owners v. Callaghan, first we look at the intent of the parties in the lease. That's the first analysis that must be done. We're looking towards where the rent payments used to pay for the insurance, and we're also looking as to the responsibilities as stated in the lease as to personal property and the premises. But aren't rent payments of a landlord used to cover all sorts of things, such as fixing the roof, fixing the gutters, all of those types of things that are normal in terms of providing a habitable premises to be let? That's true, and it is the landlord's premises, but the tenant is the one that's, in essence, is paying for those repairs or improvements. Well, that's not really true. The tenant is paying the rent for the apartment or the house. Correct. He's not paying for all of those things. The landlord is. Correct. There's some provision, I would think, in the lease that says that the tenant is going to pay a portion of the rent to the landlord and a portion of the rent to the insurance company. The money belongs to the landlord once the rent is paid. That's his money. So, if the landlord decided that he was going to put all that money together and save it and buy a Jaguar, does that make the tenant a partial owner or an implied owner of the Jaguar? No. Can I butt in here a minute? When the landlord puts in the lease that he will, as part of the lease provision, that he will provide fire insurance on the building, his property then, as part of the lease, then isn't it presumed that the rent is going to help pay for that? I mean, when we say that landlord's really paying for it, well, landlord's just their rent to pay for those expenses. And secondly, doesn't every insurance company know in Illinois that when they write a policy on rental property that they, due to longstanding Illinois case law, that as far as fire insurance to the structure, that they're also insuring against the tenant's negligence in causing a fire? That's been a long take for a long time. Isn't that right? Exactly, Justice Smith. Exactly. And that goes to the Dix decision, and it goes to, I'd say, this court's decision in 2011 in Auto Owners v. Callaghan. It's well settled. The circuit court in this case seems to apply the logic of the decision in Shelter Insurance v. Hacker, which had to do with a personal injury case involving a liability issue. It had nothing to do with the circumstances that were faced in this case. This case involves fire insurance. So did Dix Mutual, and so did Auto Owners v. Callaghan here in this third district before this third district court in 2011. The precedent is clear. Under that homeowners policy for that purpose, correct? You mean not homeowners, but a commercial liability? The landlord's policy, he would not be a co-insured for that reason. I would say that's correct, unless the landlord was somehow—he wouldn't be co-insured. The only way that policy would apply is somehow if the landlord harbored the dog. No, but if it's the tenant's dog and the tenant goes out and—the tenant's dog attacks somebody, or the tenant goes out and punches somebody in the nose or whatever, but that type of liability is—the tenant is not a co-insured under the landlord's policy for purposes of that. He's a co-insured only for purposes of fire insurance, fire damage to the premises. Am I right? That's correct. That's what the Dix decision—I mean, it was specific to the facts of that case, as was Callaghan, and that's what I'm asking this court to correct in this case. If we look at the lease in this case specifically, it indicates that the—and we look at Dix, we look at Callaghan, we look at this lease, it's clear that the fire insurance in this case should have provided coverage to the Shecklers as co-insurance. It's just absolutely clear. So we're really making an exception just for the fire insurance coverage is just really what you're saying, because logically there'd be no reason, if in the lease the tenant could have a dog on the premises, that the liability insurance of the landlord should make that tenant a co-insured against the negligence action. That is, dog bit this person. Well, and this is not a dog— We really are just saying it's just fire insurance that we've done this with, right? Correct, Your Honor, and we're not making an exception, really. What we're doing is we're following the precedent of both the Supreme Court of Illinois, as well as this court's previous decision in 2011 in auto owners versus Callaghan. Yeah, but are the parties in the same situation in these legal actions that they were in Dix? Very, very, very similar. Similar, but not the same. Exactly. That's correct. Was Callaghan—oh, excuse me. Oh, go ahead, Mary. Thank you. Was Callaghan a subrogation case? Callaghan was not a subrogation case. Callaghan was against—was the actually auto owners going after the tenant. Well, it was a subrogation case. They paid the landlord, and they were trying to subrogate against the tenant. Well, in that sense, yes. And the court said you can't do that because you can't subrogate against your own insured, and the tenant is a co-insured under Illinois law. Correct. Yeah, in that sense, yeah. It did not involve a third party, like in this case, third-party action. It involved the insurance company proceeding directly up to the tenant. I believe—and this is a new experience for all of us, Mr. Wertz—but I think the light looks like it's red. It does. And so I think you're— I'm done. Mr. Robertson will have time in reply. I am done. Thank you, Your Honor. Thank you, Mr. Wertz. Mr. Wenker, you may proceed. Thank you. May it please the court, justices, counsel. In this case, the trial court— Did you just denounce for the record your name? I did, but go ahead. Thank you, Your Honor. Thank you for reminding me. Peter Venkar, attorney for auto owners Appelli. Thank you. Thank you. Thank you again for the reminder, and sorry I didn't do that to begin with. In this case, the trial court followed the proper traditional rule of law that the determination of whether or not there's a duty to defend is found by comparing the underlying pleadings to the underlying policy at issue. Well— Well, let me—let me—let me butt in here and ask a question. Thank you, Justice Smith. Could auto owners have—so they've paid the landlord, so now they're segregating, and they sued the worker. Could they have sued the tenant in segregation? Could they have sued the tenant in—I'm sorry. This is a segregation case originally, right? Correct. Auto owners paid the landlord. They sued the worker. Correct. Okay. Now, could they have sued the tenant? Could they also have named the tenant as a defendant? Under a strict segregation context, no. And that's because they can't segregate against their own insured, correct? And under Illinois law, that tenant was a co-insured for purposes of fire damage. Under—if the case had met the exact and the particular facts of Dix, then yes. And in this case, the lease provided—told the tenant that, hey, I, the landlord, will provide—I will buy the fire insurance. Correct. The lease said the landlord, Mr. McIntosh, would provide fire insurance. The lease does not state that he will cover liability. And in fact, the lease indicates that the owner is not liable for damages caused by the tenant's negligence. And also, it says the tenant is—that he will provide insurance to insure the tenant. That's what fire insurance does. It also insures you against your own negligence. And it would insure the tenant against his own negligence by him providing the insurance. In other words, the tenant doesn't need—that lease tells the tenant, you do not have to go out and buy fire insurance to cover the premises. Now, as far as your own personal property, that's another issue. Would you agree with me? That's what the lease told the guy because the landlord said, I'll buy the fire insurance. The lease says that I will buy a fire insurance, and typically, fire insurance is a first-party policy, whereas the duty to defend falls under the liability—the dwelling landlord liability portion of the policy. Well, let's—let me give you a scenario. Let's suppose that you had a landlord here that says, okay, the building blew up, but I don't want to turn in an insurance claim. And the reason I don't want to turn insurance—I've had another claim, and if I turn this claim in, the insurance company is going to either raise my rates or cancel me because this will be my third claim. And so I don't want to turn in the insurance. So, Mr. Tenant, I'm going to sue you for damaging my building. The tenant then goes to auto owners and says, hey, I'm being sued for damage to this building. It's not a segregation case, and he provided fire insurance for this. I want you to cover this loss. What does auto owners do? I think the underlying issue there would be a potential breach of contract case by the tenant against the landlord for not providing what they said they'd provide under the lease. Well, under DICS—so if—you agree with me? If auto owners denied that claim and says, oh, we're not going to pay it, then they've put their name insured and breached the contract. Wouldn't they—the landlord said, I'm going to provide you your fire insurance, and if auto owners denied the claim, they would have just put their tenant in breach of—or their landlord, their name insured in breach of contract because he said he'd provide the insurance. Again, I don't know that auto owners would be the party to have put that landlord in breach of contract. I think the landlord's actions would have put him in breach of contract. Well, under DICS and longstanding Illinois law, the tenant is a co-insured. When the lease says the landlord will provide that insurance, then the lease—when contracts—the lease says he'll provide that insurance. Under Illinois law, I mean, fire insurance policies have many insureds that aren't named. For example, my homeowner's policy, maybe the policy's in my name. My wife is a co-insured. She's not named. My son who lives in the house is a co-insured, is he not? Under the—he would be a co-insured in the context of if the insurance company attempted to subrogate against that person. And again, this is—the DICS decisions and the case law coming to DICS, it's all inside the subrogation universe. None of those cases expand to the duty to defend analysis. Because of this third-party claim, it's almost as if—so let's suppose that the verdict had come down this way instead of not guilty. And apparently the jury felt that the tenant was the one who screwed up because they found the landlord—they found the worker not guilty. And somebody made a mistake. I mean, houses don't just blow up. And so what if the verdict had come back and they passed on 50 percent or something to the tenant? So now the tenant's on the hook for—we'll just pick a number—$100,000 for fire damage to that building that it owes the worker. And so now they're liable for $100,000 or some number for fire damage to the building when under DICS they were co-insured under that policy. So it's almost like a backdoor way for the insurance company to subrogate against the tenant by denying them any coverage when they get sued for fire damage to the building. What's the difference, whether it's an insurance company making the claim against that tenant or a third party? The difference is, again, it's outside of the subrogation context in that— Well, not really, is it? But for the subrogation case, there would have been no third party claim, would there? Well, there could have been. The landlord—I mean, we're speaking typically hypothetical now and we're moving from the record of the case. But the landlord could have had other theories to sue the tenant. And it's—I guess if you could clarify the question one more time. Well, let me try it another way. Okay, so this subrogation case is named because the insurance company can sue in the name of their insured as long as the insured has something, even a small deductible. And let's suppose their son, who's not named, was over at the insured premises that day, and the worker who gets sued in subrogation decides that son did something that really caused this. Well, I think, again, you'd look to this—you'd look to that as a duty to defend, which would come under the landlord liability policy. There is no duty to defend under the first party policy. And you'd go to the exclusion specifically found in the policy in the record of this case, that no coverage applies to property damage occupied or used by an insured. If the son in this hypothetical is using, occupying, staying in, or otherwise caring for the property and he's the one that caused—or his negligence caused this damage, and that's what the third party, the coverage exception would apply to that hypothetical. Okay, so perfect. The policy provided that it excluded premises occupied by an insured, right? Correct. Okay, so it's—owners knew they were selling a landlord's policy and that there was going to be somebody other than an insured in that building, because if the insured was occupying it, there'd be no coverage. Correct. All right. Anyway, go ahead. Well, let's get back to the facts of this case. Go ahead, Mr. Van Karp. Yes, I think the most important and distinguishing factors of this case, one being that the court index was—again, I think it's very important to remember that that was a motion to dismiss. That was at the pleading stage. So any allegation of fact, if properly pled, was admitted or allowed or taken as truth. Now, there's no discussion of what those well-pled allegations were. We don't know if the whole issue, the dicta decision as far as rent going towards—or payments of rent going towards the policy, if there was—if that allegation was even well-pled. However, in this case, there's specific facts in the record, undisputed, that this policy was paid for entirely prior to ever receiving any rent from this particular tenant. Well, that's a ridiculous argument for the simple reason that when the landlord says that he is going to provide fire insurance, you think he does it out of the good of his own heart? Or does a landlord who owns rental property set the rent so that he hopefully still makes a profit after paying things like fire insurance? So whether he gets it up front or he gets reimbursed for it in the rent, and to say that somebody who rents the place the day before the premiums due under this situation is covered, who pays his rent the day before the landlord's premium is due, is covered, and somebody who rents the property two days after the landlord pays the fire insurance premium for the year is not covered, with all due respect, that's a silly argument, and Dix doesn't make that distinction. Your Honor, I apologize if I appear to be making a silly argument. However, it's based on the fact that Dix said under the particular instance of this case, and in that case, the allegations of fact were that the rent was actually paid, and that that landlord paid that policy with the rent from that tenant. In this case, that does not exist. That is a distinguishing factor. And I think outside of the one side of the argument is, does that stand or cut someone's liability by a day? There's other things like statutes of limitations that cut your ability to even file suit by a day. But also, the other side of the argument goes to Justice McDade's argument or comments that the other side of that argument is that any payment towards anything is then attributed to the tenant as well. I think if you're going to follow and if Dix is controlling, then it's under the particular facts as the Supreme Court stated of that case. In that case, they found the fact was that for this property, the rent from that tenant went towards that policy. In this case, you don't have it. That's why the argument is made. Again, we're not trying to do anything fishy or get flippant with the court. I'm just explaining why that is the reason for that argument. Again, in the instance of Dix, it applies to subrogation cases. Nothing about Dix changes the universal and well-studded law in Illinois that for a duty to defend, which is what Shecklers are alleging under this declaration or DEC action, that goes to policy language and it goes to the pleadings of the underlying complaint. Now, we've talked now a lot about Dix and the application of these equitable principles, but a duty to defend is not based in equity. It's based on contract construction. It's based on the plain language. In this case, the plain language of the policy would, even if the tenants were considered to be coinsured, would exclude it. In an oral argument during the summary judgment, one of the hypotheticals asked by the judge below was, well, Dix says nothing that insurance companies couldn't provide exceptions or still don't have the ability to contract. In this case, there is an exception and the insurance company does not lose that contract. Even if they were to be coinsured, the coinsured now don't get to change the concept or the contract itself. They don't become superinsured and receive more coverage than, say, the landlord's son would receive if he was occupying the property. And finally, as I see the yellow light is now on, I also just wanted to mention that the allegations regarding a breach of duty to defend and allegations regarding violation of Section 155 of the Insurance Code, I think just part of that goes to that there is a bona fide defense. There was a bona fide defense to this case. That's even clearer now that summary judgment was granted by a district court below. I think that at least shows that... Your red light has come on. Just finish your sentence, please. That shows that there was a bona fide defense and it's reasonable in that a judge of the lower court found it reasonable. Thank you. Thank you, Mr. Venkert. Mr. Robertson, you may reply. Yes, John Robertson for the appellants. May it please the court, I apologize. I created this mess. I'm now going to try and explain it. First of all, Mr. Venker is incorrect about what the record is in this case about the payment of the rental. If you go to the record C-31, 83 and 84, you'll find that the landlord at his Macintosh, at his deposition said that the lease required him to pay the fire insurance and testified that for his, I think it was 18 rental properties. He'd collect the rents from those various properties and the rents were used, run through the account and then used to pay for all of them. What Mr. Venker in effect is arguing for is what I call the rich landlord exception to Dix, for which I believe there's no basis. The second thing I just want to say is that Dix Mutual changed the law about whether not naming the renter in the policy changes things. Since Dix, renters are covered for damage to the property. It's not a general liability policy, but it's for damage to the property. That is well settled. The real question, I think, is how does this come up in a contribution context? Because here's what happened in this case. Mr. Workman was sued for $150,000 on his $100,000 liability policy. And as we took the depositions of the parties, it became apparent that after Mr. Workman left, there was a dispute as to whether there was a smell of gas when he left. There's no accounting for what Mr. Sheckler did during much of that period. The Shecklers did testify that for, and I'm going to generalize, about two hours, the smell of gas got stronger and stronger. They then took the preventative of spraying Febreze around the house and then just to make sure that everything was okay, Mr. Sheckler lit the stove. That's how, and it wasn't an explosion, it was a fire of some ferocity. In any event, that's what happened. When I reviewed that, it appeared to me that the tenant was either entirely responsible for the fire, or alternatively, 75 to 90% responsible. So here's what happened. We were defending the case. We proposed either that auto owners have a damage reduction or that it be filed as a contribution action. Auto owners stipulated it being a contribution action. That happened. The Shecklers then went to the only lawyer they had had any encounter with, which was Mr. Wertz, because that's the office where their depositions were taken. In essence, what auto owners is attempting to do is pass through 100% liability to a party who at most was 20 or 25, 10%, whatever it would be, at fault. We tried the case. Mr. Workman was exonerated. However, the Shecklers were very ably defended by Mr. Wertz, and candidly, there's nothing at all that I can see in any of the cases that suggest that the same result doesn't occur in a third party contribution case. The reason is, it's not a claim for some other injury. It's still a claim for injury to the house. The premium that was charged by auto owners was set based on the value of the house. That's the insured risk. There is no open-ended liability as there might be if it were treated as a personal injury because somebody's dog bit the mailman. Justice Holdridge, your earlier questions, with all due respect, reminded me very much of the loan dissent. If we go back to the Dix Mutual case, which was, I think, written by your mentor. But Dix changed the entire landscape of landlord-tenant, and it did it because that exclusion that's in the auto owner's policy, it's also in renter's policies. If that exclusion's enforceable, a renter can't insure for damage to the property. And so, that's it in a nutshell. Any questions? I don't believe I hear any, Mr. Robertson. Then I'll apologize for my brevity and be quiet. Don't apologize for that now. No. We want to thank you. The court wants to thank you for participating in this oral via Zoom. We really appreciate everybody trying this new experience. And so, in conclusion, this matter will be taken under advisement and a written disposition shall issue. At this time, if our clerk is listening, I think you folks will be dismissed from the meeting. Yep, time is up.